# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**ELIJAH J. BARNES**                                                                                  **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 2:08cv45KS-MTP**

**STONEBRIDGE LIFE INSURANCE COMPANY**                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#33]** filed on behalf of the defendant. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

The case arises out of a claim for accident disability benefits under a blanket insurance policy issued by Stonebridge Life Insurance Company (Stonebridge). On February 7, 2002, Barnes became covered under a blanket accident disability insurance policy No. 25649GM956 (the Policy) issued to HealthExtras, Inc. Barnes was eligible to purchase the coverage by virtue of a membership in HealthExtras, Inc. The Policy paid an accident disability benefit under the following circumstances:

> If an Injury to an Insured results in any of the following Losses, the Company will pay the Accident Disability Benefit shown in the schedule. The Accident Disability Loss must occur within 365 days of the accident and the Insured must survive for at least 180 days from the date of the Accident Disability Loss. The

Company will not pay a benefit until the 180-day period has been satisfied.

The Policy also provided enhanced benefits for an insured who suffered a loss while wearing his or her seatbelt and for home alteration and vehicle modification. The accident disability benefit was a million dollar lump sum payment and the enhanced benefits were $10,000 for the seatbelt benefit and $10,000 home alteration/vehicle modification benefit.

The plaintiff was injured in an automobile accident on January 13, 2007, when he attempted to pass an 18-wheeler, went off the roadway, and struck some trees. The plaintiff's wife contacted Stonebridge on January 24 to report the injury and to request claim forms for the disability benefit. Stonebridge advised her that the policy provided coverage if the loss occurred "within 365 days of the date of the accident and the Insured must survive for at least 180 days from the date of the Accident." Stonebridge also advised Mrs. Barnes that the plaintiff also had separate accident hospital benefits and provided her claim forms for this coverage.

On July 16, 2007, Mrs. Barnes contacted Stonebridge and requested forms for submitting a claim for the disability benefit. Stonebridge immediately began its investigation and kept the plaintiff and his attorney informed throughout the course of its investigation. However, there was a course of events which slowed Stonebridge's investigation.

The first delay occurred when the Methodist Rehabilitation Center refused to provide Barnes' medical records because he was still admitted and undergoing treatment. The record reflects that Stonebridge regularly inquired about his admission status and obtained the records as soon as Methodist Rehabilitation Center would

release those records.

Once Stonebridge obtained those records, on October 8, 2007, it determined that an independent medical exam was appropriate given the plaintiff's diagnosis of incomplete tetraplegia, studies in the medical literature that stated impairment is sometimes minimal with incomplete tetraplegia and because Barnes' physical therapy notes showed use of his legs and arms. These facts led Stonebridge to conclude that it should exercise the right it had under the Policy to require Mr. Barnes to undergo an independent medical exam (IME).

Stonebridge initially had difficulty finding a neurosurgeon to conduct the IME, but eventually was able to schedule one with Dr. Victor Bazzone for November 30. 2007. After the IME was conducted, Dr. Bazzone became ill and was hospitalized. Stonebridge repeatedly contacted Dr. Bazzone's office in an attempt to secure the IME report. Stonebridge constantly updated the plaintiff and his attorney on its progress in obtaining the IME report, which was finally received on January 28, 2008.

The claims manager, James King, who had 26 years experience, recommended payment of the claim the next day. His supervisor, Ken Costa, reviewed the claim on January 30 and approved the recommendation. It was then routed to Dan McGahey, the Chief Financial Officer, who approved payment on February 4. That same day, Barnes' attorney faxed a copy of this lawsuit, originally filed on January 31 in Jefferson Davis County, to James King. King forwarded the complaint to McGahey who contacted the attorney to advise him that payment of the claim had been approved and requested he dismiss the suit. The attorney declined and advised McGahey to issue the check payable to him and the plaintiff, which was done that day, February 5. The

check was negotiated by the plaintiff on February 7.  A total of $1,020,000 was paid, which represented policy limits of $1,000,000 for total disability and $10,000 for seat belt benefits and $10,000 for home modification benefits.

The plaintiff filed the instant action in the Circuit Court of Jefferson Davis County on January 31, 2008.  The action was timely and properly removed by the defendant.  The plaintiff asserts two counts: Count I is a claim for breach of contract and Count II is a claim for bad faith failure to pay insurance claim.  The substance of the plaintiff's second count is that "the delay in paying the claim is patently unreasonable."  The plaintiff contends he has suffered damages for "lost insurance benefits, emotional distress, attorney's fees, interest and costs."  He seeks compensatory, extra-contractual and punitive damages.  The defendant has now moved for summary judgment.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of

material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## PUNITIVE DAMAGES UNDER MISSISSIPPI LAW

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases. See *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985). "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss.1988). Further,

> [a]s a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others.

*Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215 (Miss.2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d 226, 233 (1962)). See also, *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss.1999). "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Id.* (citing 15 Am.Jur., Damages, Sec. 265, p. 698).

When deciding whether to submit the issue of punitive damages to a trier of fact, the court is required to examine the totality of the circumstances as established by the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard in order to justify the imposition of punitive damages. See *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss.1996).

Based on the foregoing well settled principles of law, the Mississippi Supreme Court has instructed that "in order for the issue of punitive damages to warrant jury consideration, [the plaintiff] must show that a question of fact exists as to whether the aggregate of [the defendants'] conduct . . . evidences willful or wanton conduct or the commission of fraud. *Bradfield v. Schwartz*, --- So.2d ----, 2006 WL 1350051, *5 (Miss. 2006). The *Bradfield* Court went on to discuss the statutory procedure for the determination of whether the issue of punitive damages should ultimately be presented to the jury. In so doing, the court quoted the language of Miss. Code Ann. § 11-1-65 which provides

> (1) In any action in which punitive damages are sought:
>
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
>
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
>
> (c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.

-8-

> (d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1)(a)-(d). In *Bradfield,* the court held that once the jury returned a verdict for compensatory damages, the circuit court "should have automatically proceeded to the punitive damages phase of the trial," where "evidence concerning punitive damages [could] be presented separately at a subsequent evidentiary hearing." At *6-7.

## **ANALYSIS**

The plaintiff has admitted that the only relevant issue remaining in this case is whether the delay in processing the plaintiff's claim from January 24, 2007, until July 16, 2007, was unreasonable. He concedes that what Stonebridge did after the 180 day survival period expired was legitimate and timely. However, he contends that the defendant should have commenced its investigation between the January 24 notification date of the plaintiff's injury and the expiration of the 180 day period, and its failure to do so is tantamount to bad faith. Stonebridge responds by asserting that no coverage existed until the expiration of the 180 day survival period and that it was not legally obligated to begin its investigation until that time. The defendant also asserts that in any event, an investigation undertaken earlier than it did would have been delayed by the refusal of the Methodist Rehabilitation Center to release all of the records of the plaintiff until he had been discharged.

Cases alleging bad faith against an insurer usually involve claim denials. In this

case, the claim was never denied and, in fact, has been paid. As previously stated, although the plaintiff's Complaint states that the "investigation has been completely inadequate," in responses to written discovery, the plaintiff contends only that Stonebridge's waiting until after the 180 day survival period had passed to begin to investigate was a wrongful delay in investigating and making a decision on the claim.

In *Caldwell v. Alpha Ins. Co.*, 686 So.2d 1092 (Miss. 1996), the Mississippi Supreme Court addressed the issue of a claim for alleged bad faith delay. The plaintiff argued that the insurer's delay in paying his claim was unreasonable and amounted to bad faith. *Id.* at 1094-95. The insurer argued that any delay in payment of the claim was due to fulfillment of its duty under Mississippi law to fully investigate the claim. *Id.* at 1095. The investigation spanned approximately four months, and the insurer tendered payment of the claim within six weeks after its investigation was completed. *Id.* at 1097-98. The Mississippi Supreme Court stated the following regarding the issue presented by the case:

> This court is now faced with an issue of first impression involving an insurer which did not deny a claim but rather delayed making payment on that claim. A review of precedent reveals that this court has repeatedly addressed the issue of delay by insurer in conjunction with the denial of a claim. However, the issue of delay without an accompanying denial has not been addressed with the same degree of frequency.

*Id.* at 1098. The Court then considered and discussed the holding in two earlier cases, *i.e., Travelers Indem. Co. v. Wetherbee*, 368 So.2d 829 (Miss. 1979) and *Blue Cross & Blue Shield v. Maas*, 516 So.2d 495 (Miss. 1987). In doing so, the Court pointed out that in *Travelers* a punitive damage instruction had been affirmed where the insurer withheld payment for a period of eight months, despite being warned that the insured

was suffering economically, and further noted that the insurer's conduct was in breach of the express provisions of the insurance policy which required payment within 60 days of the proof of loss. *Id.*

Travelers had delayed payment of a contents claim under a homeowner's policy for an unexplained reason while attempting to negotiate the settlement of a companion dwelling claim. The Court concluded that the unexplained delay left a strong inference that Travelers' conduct was motivated by economic gain. *Caldwell*, 686 So.2d at 1098 (citing *Travelers*, 368 So.2d at 835).

In *Blue Cross & Blue Shield v. Maas,* 516 So.2d 495 (Miss. 1987), Blue Cross had rejected the plaintiff's medical bills for payment under a group health insurance policy. *Id.* at 496. After being questioned about the claim, Blue Cross informed the plaintiff that it would "check into it" but never provided him with any response to his inquiry. *Id*. After suit was filed, Blue Cross again rejected one of the plaintiff's bills for payment before admitting that it had made a mistake and tendering payment of the benefits in question. *Id*.

In *Caldwell*, the Court noted that "the critical factor which distinguishes the case at bar from *Maas* is that Alpha Insurance Company never denied the Caldwell claim." 686 So.2d at 1097. After review and discussion of the *Maas* and *Travelers* cases, the *Caldwell* Court proclaimed:

> This court now holds that the wrongful denial of a valid claim or conduct of such an egregious nature as in Travelers is the linchpin for submission of the punitive damages to the jury.

*Id*. at 1098. The Court affirmed summary judgment in favor of Alpha. In doing so, the

*Caldwell* Court noted that "Alpha was required by Mississippi law to conduct a thorough investigation." *Id*. The Court further held that "even assuming the 'investigation' is not viewed as a legitimate or arguable reason for Alpha's delay, it does not automatically follow that Alpha acted with 'gross negligence or reckless disregard for the insured's rights.'" *Id*. The Court stated that "the most that can be said regarding Alpha's handling of the Caldwell claim is that Alpha was negligent, if that." *Id*. at 1099.

The *Caldwell* Court further took note of the Fifth Circuit's opinion in *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395 (5th Cir. 1986) stating as follows:

> In *Tutor*, the Fifth Circuit took into consideration 'that the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment.' (Citation omitted). Given the situation presented in the case *sub judice*, *Tutor* is persuasive. In *Tutor*, there was no denial of the claim, but rather the insurer and insured were engaged in an ongoing dispute over the exact value of the property destroyed. * * * Moreover, the undisputed fact is that Alpha ultimately tendered payment of the Caldwell claim. The fact that the insurer ultimately tendered full payment of a claim is persuasive to this court.

686 So.2d at 1099.

The issue of alleged bad faith for delay in the payment of a claim was presented to the Court of Appeals of Mississippi in *Pilate v. American Federated Ins. Co.*, 865 So.2d 387 (Miss. Ct. App. 2004). In *Pilate*, the Court began its review "by noting that Pilate has not asserted a bad faith denial of payment claim. Instead, the issue is whether AmFed or Guillory committed bad faith in the *delay* of payment of benefits to Pilate during the investigation of Pilate's claim." (Emphasis in original.) *Id*. at 392. In consideration of this issue, the Court stated:

> Not all delays in the payment of claims are actionable. Professor Jeffrey Jackson summarized the law relating to delay in payment, in his treatise on Mississippi

Insurance Law, when he concluded:

> Obviously, some delay in evaluating claims is inevitable, legitimate and socially useful. Insurers are entitled, and in fact legally obligated, to investigate fully the legitimacy of claims, and some skepticism in evaluating claims is appropriate. Since an insurer has an obligation under Mississippi law to investigate claims, discharging that duty is not bad faith. However, an inadequate investigation of a claim may create a jury question on the issue of bad faith.

Jeffrey Jackson, *Mississippi Insurance Law*, Section 12:5 (2001) (citations omitted). Professor Jackson cites *Lewis v. Equity National Life Ins. Co.*, 637 So.2d 183, 187 (Miss. 1994) as authority for the last sentence quoted above. The *Lewis* court determined that an appropriate, *i.e.*, non-negligent investigation required the insurer to obtain 'all available medical information relevant to the policyholder's claim' and interview all employees or individuals who have 'knowledge relevant to the claim'. *Id.* This is the standard by which we evaluate whether AmFed's and Guillory's investigation was reasonable.

865 So.2d at 394.

In affirming summary judgment granted to the insurer, the *Pilate* Court relied upon *Caldwell* and stated that "*Caldwell* provides that an insurer's conduct does not amount to gross negligence or an intentional tort as long as the insurer is actively investigating a claim." *Id.* at 400. The *Pilate* Court further made clear that a claimant is not excused from participation and must cooperate to assist in the investigation and resolution of a claim. *Id.*; *see also, McLendon v. Wal-Mart Stores, Inc.*, 521 F. Supp. 2d 561 (S.D. Miss. 2007)(finding that six month delay did not constitute bad faith delay in determining whether to approve surgery of worker's comp claimant); *Washington v. American Heritage Life Insurance Co.*, 500 F. Supp. 2d 610 (N.D. Miss. 2007)(holding that one year delay in payment of life insurance proceeds could not support bad faith delay claim).

Under the section entitled "COVERAGE", the Policy states there is no

"Coverage" unless (1) there is an Injury, (2) the accident disability loss occurs within 365 days of the accident, (3) the 180-day survival period has been satisfied, and (4) there is permanent, complete and irreversible loss of use of one of the extremities enumerated therein. It is only after the expiration of the 180 day survival period and the furnishing of due proof of disability that Stonebridge can have any liability under the Policy. The plaintiff's right to benefits did not arise until he survived 180 days beyond the date of his injury. There was no obligation on the part of Stonebridge to begin its investigation until the expiration of this time period. There is no factual dispute that Stonebridge had a legitimate and arguable reason for taking the actions it took in this case.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#33]** filed on behalf of the defendant is granted and the plaintiff's Complaint is dismissed with prejudice and any other pending motion is denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 17th day of March, 2009.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE